**UNITED STATES DISTRICT COUR**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CATHERINE CLEMEN,

    Plaintiff,

v.                                                    Case No: 8:23-cv-2796-CEH-AEP

SURTERRA HOLDINGS, INC.,

    Defendant.

_____

**ORDER**

This matter comes before the Court on Defendant Surterra Holdings, Inc.'s Motion to Dismiss Count VII of Plaintiff's Amended Complaint (Doc. 18), which Plaintiff Catherine Clemen opposes (Doc. 22). In this employment action, Plaintiff asserts various state and federal claims related to sexual harassment, disability discrimination, and video surveillance. Defendant now moves to dismiss the common law tort of intrusion upon solitude, arguing that it fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Upon review and consideration, and being fully advised in the premises, the Court will grant the motion.

**I.     Background[1]**

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On December 7, 2023, Plaintiff Catherine Clemen filed a Complaint against Surterra Holdings, Inc., asserting various causes of action related to employment discrimination and harassment. Doc. 1. After Defendant moved to dismiss eight of the counts, Plaintiff filed an Amended Complaint on January 30, 2024. Doc. 6.

The Amended Complaint alleges that Defendant operated a cannabis business in Lakeland, Florida, where Plaintiff was employed from February 2022 to July 26, 2022. Doc. 11 ¶¶ 5,15. Plaintiff first alleges that a security guard named Robert made unwanted sexual advances toward her and wore a body camera that recorded the "gown up" areas where she and the other employees dressed for work. *Id.* ¶¶ 20, 30.

In addition to Robert's body camera, Plaintiff repeatedly complained to Defendant about its surveillance cameras and the ongoing recording of employees in the gown up areas. *Id.* ¶ 26. Although Defendant told her that the cameras were not on and no one was watching them dress and undress, Plaintiff learned these assurances were false. *Id.* ¶¶ 27, 43. On or about July 11, 2022, she viewed the camera footage and pointed out to Defendant that it showed the gown up area. *Id.* ¶ 43. The gown up area was partitioned with curtains, such that the camera captured the shoulders and head of the person undressing behind them. *Id.* Defendant informed her that the video surveillance would continue. *Id.* ¶¶ 44-45. Moreover, Defendant did nothing to ensure that Robert or other employees did not use the footage for unlawful purposes, such as distributing it or uploading it onto the internet. *Id.* ¶ 35.

After Plaintiff complained about the surveillance and Robert's sexual harassment, Defendant's managers began harassing her about her work performance by writing her up for pretextual issues, spreading false rumors about her, and, ultimately, constructively discharging her. *Id.* ¶¶ 36-41, 59.

The Amended Complaint asserts counts of sexual harassment, disability discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act. Doc. 11.  Count VII alleges that Defendant's surveillance constitutes the common law tort of intrusion upon seclusion. *Id.*

Defendant now moves to dismiss Count VII for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 18.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

3

However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## II. Discussion

The common law tort of invasion of privacy encompasses the tort of intrusion upon seclusion, which is "physically or electronically intruding into one's private quarters[.]" *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003), citing *Agency for Health Care Administration v. Associated Industries of Florida, Inc.*, 678 So.2d 1239, 1252 (Fla.1996). The focus of an intrusion claim is "the right of a private person to be free from public gaze." *Ginsberg*, 863 So.2d at 162. Intrusion upon seclusion has three elements: (1) a private quarter, (2) into which a physical or electronic intrusion occurs, (3) that is highly offensive to a reasonable person. *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-CV-1828-VMC-MAP, 2012 WL 527537, at *2 (M.D. Fla. Feb. 17, 2012) (citations omitted).

Defendant challenges the sufficiency of Plaintiff's allegations as to the first and third elements. Doc. 18. Defendant first argues that Plaintiff had no reasonable expectation of privacy in the gown up area. *Id.* at 4-6. Florida's video voyeurism statute expressly does not apply to a camera whose presence is obvious, and Plaintiff admits she was aware that the surveillance was occurring. *Id.* at 5-6. Second, Defendant contends that the Amended Complaint fails to allege facts constituting outrageous or extreme conduct. *Id.* at 6. With respect to both elements, Defendant

4

argues that employees of a medical marijuana cultivation facility must expect surveillance because it is required by statute. *Id.* at 4-6.

Responding in opposition, Plaintiff disputes that the medical marijuana statute requires surveillance of dressing areas. Doc. 22 at 8-10.  She further argues that Defendant's employees had a reasonable expectation of privacy in the area where they were changing clothes, whether or not the cameras viewed them in a state of undress, because the area was meant to be free from the public gaze. Doc. 22 at 6-8.  Plaintiff emphasizes that Defendant told her the cameras were not on, which she did not learn was false until the final days of her employment. *Id.* at 10.  Finally, she argues that the video voyeurism statute and Defendant's refusal to stop demonstrate that its conduct was outrageous. *Id.* at 11-13.

### A. The Amended Complaint does not adequately allege that Plaintiff had a subjective and reasonable expectation of privacy in the gown up area.

The first element of an intrusion upon seclusion claim is that there was a private quarter. *Stasiak*, 2012 WL 527537 at *4.  A private quarter into which an intrusion occurs is "a 'place' in which there is a reasonable expectation of privacy[.]" *Neeley v. Wells Fargo Fin., Inc.*, 8:12-CV-542-VMC-AEP, 2012 WL 5949106, at *4 (M.D. Fla. Nov. 28, 2012), quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). One's home is the classic example of a private quarter. *See Paese v. State*, 381 So.3d 4 (Fla. 4th DCA 2024) ("[T]he highest reasonable expectation of privacy a person can have" is in the home, which is "the sanctuary of privacy.") (quotation and modifications omitted).  In *Jackman v. Cebrink-Swartz*, 334 So.3d 653, 657 (Fla. 2d

5

DCA 2021), the plaintiffs established a likelihood of success in their claim of intrusion upon seclusion over the neighbor's placement of a camera to see over their fence into their backyard. The court found that they had a reasonable expectation of privacy in their fenced-in backyard, which fell within the curtilage of their residence. *Id.*; *see also Reed v. Georgia-Pacific Corp.*, No. 3:05-cv-615, 2006 WL 166534, *3 (M.D. Fla. Jan. 23, 2006) (plaintiff had a reasonable expectation of privacy at a doctor's appointment).

In contrast, there is no reasonable expectation of privacy in a public place, such as on a public street. *See Spilfogel v. Fox Broadcasting Co.*, 433 F. App'x 724, 726-27 (11th Cir. 2011) (recording of plaintiff's conversation with police officer on a public street was not an intrusion into "private quarters" for an intrusion upon seclusion claim; noting Florida law requires an "intrusion into a private place and not merely into a private activity").

A workplace is typically a public place rather than a private quarter. *Benn v. Fla. East Coast Ry. Co.*, No. 97-4403-CIV, 1999 WL 816811, *8 (S.D. Fla. July 21, 1999). Nonetheless, an intrusion upon seclusion may occur even in the workplace if it occurs in an area in which there is a reasonable expectation of privacy. In *La Porte v. State*, 512 So. 2d 984, 986 (Fla. 2d DCA 1987), for example, the court found that paid models had a reasonable expectation of privacy while they were changing clothes in a modeling studio; it therefore upheld a criminal defendant's conviction under a statute prohibiting unlawful surveillance for recording the women "in various stages of undress." In addition, the plaintiff in *Eby v. Levine*, No. 9:20-cv-80922, 2020 WL 12182264, *3-4 (S.D. Fla. Nov. 17, 2020), stated a claim for intrusion when he alleged

6

that the defendant surreptitiously surveilled him in a studio apartment that he used as a workspace in addition to private living quarters. Although the court agreed with the defendant that there was no legitimate expectation of privacy in an office, it found that the allegations were sufficient to create a factual issue as to whether the surveillance occurred in private living quarters during non-working hours. *Id.* at *4.

In a comparable context, Florida's video voyeurism statute defines a "place and time when a person has a reasonable expectation of privacy" as

> [A] place and time when a reasonable person would believe that they he or she could fully disrobe in privacy, without being concerned that the person's undressing was being viewed, recorded, or broadcasted by another, including, but not limited to, the interior of a residential dwelling, bathroom, changing room, fitting room, dressing room, or tanning booth.

Fla. Stat. § 810.145(1)(c).[2]

A reasonable expectation of privacy must be subjective as well as objective. The video voyeurism statute criminalizes only "secret[]" surveillance that occurs without the subject's knowledge or consent. *Id.* § 810.145(2)(a). Accordingly, it does not apply to a surveillance device whose "presence…is clearly and immediately obvious." *Id.* § 810.145(5)(c). In the constitutional context, too, an individual must have a subjective expectation of privacy before he can assert Fourth Amendment protections. *See Carpenter v. U.S.*, 585 U.S. 296, 304 (2018) (the Fourth Amendment protects searches

---

[2] Effective October 1, 2024, Florida Statutes § 810.145 will be amended to redesignate the offense of video voyeurism as "digital voyeurism." 2024 Fla. Sess. Law Serv. Ch. 2024-132 §§ 1, 9. The amended statute will remove the phrase "place and time" in the definition of "reasonable expectation of privacy" with "circumstances under which." *Id.* § 1.

7

of places or items that an individual "seeks to preserve [ ] as private") (quotations omitted); *Smiley v. State*, 279 So. 3d 262, 265 (Fla. 1st DCA 2019) (criminal defendant had neither a subjective nor reasonable expectation of privacy because he knew he was being recorded, even though he did not give his consent, and he was merely a guest who had been asked to leave). For this reason, the *Jackman* court highlighted that the six-foot-high privacy fence and "no trespassing" signs the plaintiffs had erected around their backyard established their "subjective expectation of privacy." 334 So.3d at 657.

Applying these principles to Plaintiff's intrusion claim, the Amended Complaint does not adequately allege that surveillance occurred in a private quarter in which Plaintiff had a subjective and reasonable expectation of privacy. It is true that, like in *La Porte*, Defendant is alleged to have recorded Plaintiff in a dressing area of the workplace as she was changing. Doc. 11 ¶ 26. At first blush, this would seem to fall squarely within a common-sense understanding of a place in which an objectively reasonable expectation of privacy exists. However, Plaintiff clarifies that the cameras did not show the inside of the actual dressing rooms, which were "partitioned off with curtains" such that only "the shoulders and head of the person undressing were visible" from the camera angle. *Id.* ¶ 43. Plaintiff offers no authority to suggest, nor alleges sufficient facts to demonstrate, that the *outside* of the workplace changing area is subject to the same reasonable expectation of being free from the public gaze as the inside would be. As written, the allegations do not support Plaintiff's argument that the "'gown up' area was meant to be free from public gaze." Doc. 22 at 7.

Plaintiff relies on *Doe by Doe v. B.P.S. Guard Svcs., Inc.*, 945 F.2d 1422, 1427 (8th Cir. 1991), in which the Eighth Circuit found that the plaintiffs need not prove that they were videotaped in a state of undress to state a claim for invasion of privacy, "[s]o long as there was an objectionable intrusion into the plaintiffs' enjoyment of an area in which the plaintiffs had a right and expectation of privacy." The *Doe* plaintiffs were a group of models who were surreptitiously surveilled in a makeshift changing area by security guards during an event at a convention center. *Id.* at 1424. But there is no indication in *Doe* that the plaintiffs were changing clothes behind a curtain such that the surveillance *could not* capture them in a state of undress, as here—only that it did not. Moreover, the Eighth Circuit was considering a claim of intrusion upon seclusion under Missouri law, which does not have the same element of a "private quarter" as the Florida tort. *See*, *e.g.*, *Corcoran v. Southwestern Bell Telephone Co.*, 572 S.W.2d 212, 215 (Mo.App. 1978) (listing elements of unreasonable intrusion upon seclusion under Missouri law).

The Amended Complaint also fails to allege that Plaintiff had a subjective expectation of privacy in the gown up area, because it indicates she was aware that it was under surveillance. *See* 810.145(5)(c) (excluding from video voyeurism statute surveillance that occurs with a visible camera). Although Plaintiff alleges that Defendant told employees the cameras were not on and no one was watching them undress, *id.* ¶ 27, the allegations imply that she did not believe Defendant's assertion: she "repeatedly" complained about the "ongoing" video surveillance of the gown up area, she viewed the camera footage herself, and Defendant informed her the

9

surveillance would continue. *Id.* ¶¶ 26, 42, 43, 45. The allegations also indicate that Plaintiff was aware Robert was wearing a body camera. *Id.* ¶ 31 (Robert's third-party employer "confirmed" to Plaintiff on April 25, 2022, that Robert was wearing a body camera even though it was not required). As a result, just as in *Smiley*, the Amended Complaint does not adequately allege that Plaintiff had a subjective expectation of privacy.

Accordingly, the allegations do not establish the element of a private quarter.

### B. The Amended Complaint does not allege that the surveillance of the gown up area was outrageous and extreme conduct.

The third element of an intrusion claim is satisfied if the intrusion is highly offensive to a reasonable person. *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-CV-1828, 2012 WL 527537, *2 (M.D. Fla. Feb. 17, 2012). The Florida Supreme Court has held that an act constituting an invasion of privacy "must be of such nature as a reasonable man can see might and probably would cause mental distress and injury to anyone possessed of ordinary feelings and intelligence, situated in like circumstances as the complainant[.]" *Cason v. Baskin*, 155 Fla. 198, 215 (Fla. 1944) (quotation omitted). An act will satisfy this standard if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985); *see also Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991) (the conduct alleged must be "atrocious, and utterly intolerable in a civilized community."). In considering the third element of an intrusion claim,

courts have looked to the outrageousness standard of intentional infliction of emotional distress. *See*, *e.g.*, *Stoddard*, 573 So. 2d at 1062.

In *Stasiak v. Kingswood Co-op, Inc.*, the court found that the plaintiffs did not state a claim for intrusion because the allegations that the defendant obtained their credit histories without a permissible purpose did not "rise to the level of 'intolerable in a civilized society.'" 2012 WL 527537 at *3. Likewise, allegations that the defendant repeatedly called the plaintiff and her coworkers in an attempt to collect a debt, belittling her and causing her to change her phone number, were not outrageous enough to state a claim for intrusion. *Neeley v. Wells Fargo Financial, Inc.*, No. 8:12-cv-542, 2012 WL 5949106, *1, *5 (M.D. Fla. Nov. 28, 2012) (Covington, J.); *see also Oppenheim v. I.C. System, Inc.*, No. 8:09-cv-497, 695 F.Supp.2d 1303, 1310 (M.D. Fla. 2010) (Whittemore, J.) (same, where defendant placed 35 to 40 calls to plaintiff's home over a period of three months). On the other hand, an allegation that the defendant accessed the plaintiff's emails without authorization and forwarded them to others stated a viable claim for intrusion because it would be highly offensive to a reasonable person. *Stirling Intern. Realty, Inc. v. Soderstrom*, No. 6:14-cv-1109, 2015 WL 403318, *6 (M.D. Fla. Jan. 28, 2015) (Byron, J.).

An unauthorized entry into someone's home may satisfy the standard if it is sufficiently disturbing or intrusive. In *Jacobini v. JP Morgan Chase, N.A.*, No. 6:11-cv-231, 2011 WL 13248162, *4 (M.D. Fla. Aug. 1, 2011) (Presnell, J.), for example, the allegation that the defendant's employee twice broke into the plaintiff's house while she was home, causing fear and panic, was sufficiently outrageous and extreme to

11

support claims for invasion of privacy and intentional infliction of emotional distress. Likewise, the complaint in *N.A.S. v. Morada-Haute Furniture Boutique LLC*, 2021 WL 5547626, *5-6 (S.D. Fla. Aug. 24, 2021), survived a motion to dismiss where it alleged that the defendant hired a camera crew to conduct unauthorized photoshoots of the plaintiff's home and rifled through her toiletries, underwear, prescription drugs, and other personal items.  But the allegation that a code enforcement officer entered the plaintiff's apartment without permission and took pictures of renovations did not rise to the level of outrageous conduct in *Parker v. Town of Palm Beach*, No. 9:17-cv-80176, 2017 WL 2629490, *3 (S.D. Fla. June 19, 2017), because the plaintiff did not allege that the officer invaded or searched "areas with heightened privacy interests" such as the bathroom or bedroom.

Unauthorized surveillance may also meet the threshold of being outrageous and highly offensive to a reasonable person where it captures private activities in areas where individuals have a reasonable expectation of privacy. *See, e.g.*, *Jackman*, 334 So.3d at 657 (surveillance of private backyard); *Baugh v. Fleming*, No. 03-08-00321-CV, 2009 WL 5149928 (Tex. App. Dec. 31, 2009) (evidence was legally sufficient to support judgment for intrusion upon seclusion under similar standard as Florida, where a party videotaped a neighbor through her kitchen by peering over a privacy fence in their backyard); *Wolfson v. Lewis*, 924 F.Supp. 1413, 1433-34 (E.D. Penn. 1996) (defendants' use of a long-range microphone in an attempt to capture plaintiffs' conversations in their home, during a course of harassment and other frightening

conduct, could constitute intrusion upon seclusion under Pennsylvania and Florida law).

Here, Plaintiff argues that Defendant's intentional and continued surveillance of the gown up area, and its failure to stop Robert from using a body camera in the gown up area, was "outrageous, extreme, and beyond the bounds of decency." Doc. 22 at 12-13. However, the Court again finds that the alleged conduct of recording the *outside* of the curtained changing areas, viewing only the head and shoulders of those inside, does not "rise to the level of 'intolerable in a civilized society,'" *see Stasiak*, 2012 WL 527537 at *3, such that it is comparable to forwarding personal emails or rifling through private belongings in a home. *See Stirling Intern. Realty*, 2015 WL 403318 at *6; *N.A.S.*, 2021 WL 5547626 at *5-6.

Plaintiff contends that the video voyeurism statute's protection of changing areas demonstrates that Defendant's conduct was outrageous. But she offers no authority holding that an alleged violation of that statute is *per se* outrageous. Moreover, as discussed in Section II(B), *supra*, she has not demonstrated that there is any reasonable expectation of privacy in the outside of a dressing room. For this reason, the Court cannot find that the alleged conduct is similar to the unauthorized surveillance of a private home in *Jackman*, *Baugh*, or *Wolfson*.

Plaintiff's reliance on *Stockett v. Tolin*, 791 F.Supp. 1536, 1556 (S.D. Fla. 1992), is also unavailing. In *Stockett*, the court found that evidence of the defendant's alleged course of conduct of sexual harassment, which included repeated groping, licentious comments, and one occasion in which he viewed her in the women's bathroom while

13

she was changing clothes, supported various torts including intrusion upon seclusion. *Id.* at 1542-43, 1556. However, the court specifically found that it was the defendant's "battery of Plaintiff—the repeated and offensive touching of the most private parts of Plaintiff's body—[which] constitutes an intrusion into her physical solitude," in addition to his entry into the women's bathroom. *Id.* at 1556. The Florida Supreme Court subsequently clarified that an intrusion into a body part, rather than a place, does not support an intrusion upon seclusion claim. *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 162 (Fla. 2003). Moreover, the *Stockett* defendant's entry into the women's bathroom was presumably unauthorized, but Plaintiff does not allege that Robert lacked permission to enter the gown up area, nor that he looked or surveilled her behind the curtain where she was changing.[3] In all, the Amended Complaint does not allege sufficient facts to demonstrate that the Defendant's conduct was extreme and outrageous.

Because the allegations do not establish the first and third elements of an intrusion upon seclusion claim, Count VII does not state a claim. Accordingly, the motion to dismiss is due to be granted. The dismissal will be without prejudice, and Plaintiff will be granted an opportunity to file a Second Amended Complaint. To the extent Plaintiff wishes to continue asserting a claim of intrusion upon seclusion, the Second Amended Complaint must allege adequate facts to demonstrate that

---

[3] Further, Plaintiff's continued reliance on *Doe by Doe*, 945 F.2d 1422, is particularly unhelpful with respect to the third element of a Florida intrusion claim, because Missouri law does not require an intrusion upon seclusion to be outrageous. *See, e.g., Corcoran v*, 572 S.W.2d at 215.

14

Defendant surveilled a private quarter and that its conduct was extreme and outrageous.

Accordingly, it is **ORDERED**:

1. Defendant Surterra Holdings, Inc.'s Motion to Dismiss Count VII of Plaintiff's Amended Complaint (Doc. 18) is GRANTED.

2. Count VII of the Amended Complaint (Doc. 11) is dismissed without prejudice.

3. Plaintiff is granted leave to file a Second Amended Complaint within **FOURTEEN (14) DAYS** from the date of this Order, which cures the deficiencies discussed in this Order. Failure to file an amended complaint by the time provided will result in this case proceeding on the remaining claims.

**DONE** and **ORDERED** in Tampa, Florida on August 13, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties